(66 South. 227)

No. 20305.

BULL v. HOTEL GRUNEWALD CO.,
Limited.

(March 16, 1914. On Rehearing, Oct. 20, 1914.)

*(Syllabus by the Court.)*

MUNICIPAL CORPORATIONS (§ 705*)—STREETS —PERSONAL INJURIES—RUNAWAYS—LIABILITY OF OWNER.

Where one is injured by a runaway horse, he is not entitled to damages from the owner of the horse, where the evidence shows that the owner was without fault.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1515–1517; Dec. Dig. § 705.*]

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Harry W. Bull against the Hotel Grunewald Company, Limited, for personal injuries. From a judgment for defendant, plaintiff appeals. Affirmed.

Woodville & Woodville, of New Orleans, for appellant. Dinkelspiel, Hart & Davey, of New Orleans, for appellee.

BREAUX, C. J. Plaintiff sues the defendant for $5,000 damages. He charges that the employé of defendant was guilty of gross negligence.

Plaintiff was employed by, and was at work for, the sewerage and water board, as sewer gang foreman. On the 20th of August, 1909, at about 10 o'clock a. m. of that day, he went to the manhole at St. Charles and Euterpe streets to direct the work. There was a laborer with him, who, as he testified, said to him, "There is a runaway horse." He stated further that looking down St. Charles street he saw a large horse attached to a covered wagon, rushing up St. Charles street; that as he started to run to the sidewalk on the lake side of St. Charles street, he heard a crash, and the next moment the horse was on him, and that he could feel the animal's breath on his neck; that he grabbed the chain, coming with force, and then let it go; it bruised his arms; the chain encircled his knee, and he was thrown on the street; on looking up, the horse reared, and the shaft of the wagon was near; he grabbed it, and was dragged about 20 feet; his pain was great; the shaft struck his forehead four or five times; he feared that the wagon to which the runaway horse was hitched would run over him; he attempted to avoid horse and wagon. The left wheel ran over his right ankle. Two men came and lifted him to the sidewalk. The horse had broken away from the harness and the wagon was near by. He was stunned.

The manhole at which he and a laborer were standing was about ten or twelve feet from the corner of Euterpe and St. Charles streets.

Plaintiff charges that the horse was fretful and would run away at times; that there was a metal ball at the end of the chain by which the animal was hitched; that it was a round ball instead of a flat surface; being round, as it rolled it rendered the horse restless and caused him to run away as he had done at previous times.

The plaintiff alleged that in consideration of his great physical suffering he is entitled to $2,000, and $3,000 for injuries received.

The first witness for plaintiff, the workman who was attending to some work at the manhole, near which plaintiff was standing, said that he saw the horse moving, and the ball rolled off (the ball, according to this witness to which a chain was attached and to which the horse's bridle was hitched with this chain); that when the ball rolled off the banquette the horse jumped. Upon seeing the animal jump, he said to plaintiff to "Look out!" that plaintiff ran toward Canal street to get out of the way of the horse. The chain before mentioned struck plaintiff and swung around his leg and body. Plaintiff fell down, holding to the chain and to the shaft; the horse worked himself out of the shaft and jumped on plaintiff. He could not reach the horse because he was jumping around; that the front wheel ran over the ankle. They—that is, the witness and a colored man—then put plaintiff on the sidewalk. He said that defendant's driver on coming up to the place of the accident said that it was not the first time that the horse had run away.

This statement is denied by the driver of the wagon.

It will be stated at this time that the defendant company has a laundry forming part of its hotel enterprise. The driver left the horse hitched to a strap fastened to a weight resting on the sidewalk.

The preponderance of the testimony is that it was not a ball, but a weight with flat surface at bottom of it.

Plaintiff, on his own behalf, testified that the wagon was about 20 feet off when he (the horse) started to run. This is contradicted by defendant's driver, who testified that the horse started in a walk and was not attempting to run away. The driver also testified that plaintiff attempted to stop the horse. This the plaintiff denies.

Mr. Grunewald testified, and in this he is not contradicted, that he has the management of defendant's hotel and laundry; that the weights for hitching horses when left standing are supplied to the laundry wagons; that the wagons have the regulation hitching straps and weights when the driver is placed in charge; that they never were supplied with round weights, and that he had never heard of round weights, the weight alleged by plaintiff; that the company uses the regulation hitching straps, and that chains are not used; that the horse was not a runaway, and he had never heard of his running away.

Further, as to the horse, this witness testified that he had charge of the purchase of horses for the company, and that he was careful in the endeavor to buy good work horses.

The testimony is conflicting. Plaintiff in his own behalf as a witness said that he was struck by the chain used to hitch the horse. In fact, the weight of the testimony is that it was not a chain.

There is testimony also about a ball which was used as a weight; it rolled and frightened the horse; he ran fast, carrying the round weight.

As just above stated, the weight of the testimony is that there was no chain; it was a leather strap; and there was no ball, but the regulation weight, with flat surface.

The testimony of defendant is direct, and shows it to have been without fault. It bought the horse from a reputable dealer in horses; there is no testimony of his ever having become frightened before or since the accident, or that he was a fretful and vicious animal. The horse was fastened with the usual care and in the usual way when left on the street by the driver. There was no negligence on the part of defendant.

Plaintiff met with an accident to which many are exposed, and through no fault of defendant.

The negligence charged in this case does not appear sufficiently proved to justify granting damages. If accidents in themselves were ground for recovering damages without regard to any negligence whatever, accidents would become, even more than is now the case, one of the productive industries.

While it is true that plaintiff suffered, there was no permanent injury; no bones were fractured. Bruises were sustained and a hand strained, but, as we infer, not permanently.

The judge of the district court heard the witnesses and believed them in so far as they stated that it was an unavoidable accident.

There is no good ground for reversing the judgment.

The judgment is affirmed.

MONROE, J., not having heard the argument, takes no part in the decision.

### On Rehearing.

SOMMERVILLE, J. The opinion and decree heretofore rendered in this case are now reinstated, and made the judgment of the court.